**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ANDREW VIVERITO, individually and on behalf of those similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ESSENDANT CO.; and SYCAMORE PARTNERS MANAGEMENT, L.P.,<br><br>Defendants. | Case No. 1:26-cv-10459<br><br>CLASS ACTION<br><br>JURY TRIAL DEMANDED |

**CLASS ACTION COMPLAINT**

Andrew Viverito ("Plaintiff"), individually and on behalf of a putative class of similarly situated former employees as defined herein, brings this suit against Essendant Co. ("Essendant") and Sycamore Partners Management, L.P. ("Sycamore") (collectively, "Defendants"), and by way of this Class Action Complaint, alleges as follows:

**NATURE OF ACTION**

1. This is a Class Action Complaint brought under the Worker Adjustment and Retraining Notification Act, 29 U.S.C. §§ 2101-2109 (the "WARN Act"), and the Illinois Worker Adjustment and Retraining Notification Act, 820 ILCS 65/1 et seq. (the "Illinois WARN Act"), by Plaintiff individually and on behalf of other similarly situated persons against Defendants, which, as alleged below, operated as a single employer and/or integrated enterprise for WARN purposes.

2. Essendant maintains its corporate headquarters and a facility located at 200 Tri State International, Suite 400, Lincolnshire, Illinois 60069 (the "Facility").

3. On or about August 3, 2026, Essendant filed a WARN notice concerning the Lincolnshire Facility identifying approximately 510 affected employees and an anticipated employment-loss date of October 3, 2026.

4. Plaintiff also received written WARN notice from Essendant in early August 2026 advising him, in substance, that Essendant expected to continue his employment and pay through approximately October 2, 2026.

5. On August 27, 2026, however, Essendant informed Plaintiff that his employment would end on August 31, 2026, and revoked his system access at the end of the day on August 28, 2026.

6. Thus, despite previously identifying an employment-loss date approximately 60 days after the WARN notice, Essendant accelerated Plaintiff's employment loss by more than a month and provided only approximately four days' notice of the accelerated termination date.

7. Upon information and belief, Plaintiff's accelerated termination occurred as part of Defendants' broader restructuring, closing, and/or mass layoff affecting employees assigned to, based at, reporting to, and/or receiving assignments from the Lincolnshire Facility.

8. Plaintiff brings this action on behalf of himself and other similarly situated former employees who suffered an employment loss in connection with Defendants' closing and/or mass layoff at the Lincolnshire Facility without receiving the full 60 days' advance written notice required by the WARN Act and Illinois WARN Act.

9. Plaintiff and the other similarly situated employees should have received the full protections afforded by the WARN Act and the Illinois WARN Act.

## JURISDICTION AND VENUE

10. This Court has subject-matter jurisdiction over Plaintiff's federal WARN Act claim pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 2104(a)(5), and supplemental jurisdiction over Plaintiff's Illinois WARN Act claim pursuant to 28 U.S.C. § 1367 because the claims arise from the same nucleus of operative facts.

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and 29 U.S.C. § 2104(a)(5) because Essendant maintains its headquarters and the Facility in this District, the employment losses occurred here, and, upon information and belief, Sycamore purposefully directed, controlled, approved, and/or participated in management and enterprise decisions concerning Essendant and its Illinois operations, including the restructuring alleged herein. Defendants' contacts with Illinois and this District are therefore directly related to the claims asserted in this action.

## PARTIES

12. At all times relevant, Plaintiff was a member of the Class defined below.

13. Plaintiff Andrew Viverito is a citizen of the United States and a resident of Rolling Meadows, Illinois. He was employed by Essendant for approximately nine years and, at the time of the events alleged herein, worked as a Java Developer Level Two on Essendant's IT Shipping Systems Team. Plaintiff was a full-time, salaried employee and was not a contract worker.

14. Plaintiff worked at and/or was assigned to Essendant's Lincolnshire, Illinois location, after previously working at Essendant's Deerfield, Illinois location. Plaintiff was employed for more than six months at the time of his termination and is an "aggrieved employee" within the meaning of 29 U.S.C. § 2104(a)(7).

15. Defendant Essendant Co. is an Illinois corporation with its principal office and corporate headquarters located at 200 Tri State International, Suite 400, Lincolnshire, Illinois 60069. Essendant Co. historically has been the principal operating company of Essendant Inc., the parent holding company acquired in the 2019 transaction described below.

16. Defendant Sycamore Partners Management, L.P. is a private equity investment fund organized as a Cayman Islands limited partnership with its principal executive offices in New York, New York. Public acquisition records identify Sycamore as the private-equity sponsor responsible for the acquisition of Essendant Inc. through a Sycamore affiliate in January 2019. Upon information and belief, Sycamore has remained Essendant's ultimate private-equity owner and has exercised ownership, governance, financial, and strategic oversight over Essendant during the period relevant to this action.

17. In January 2019, an affiliate of Sycamore acquired Essendant Inc. for approximately $482.7 million. Essendant Inc. survived the merger, and Essendant Co. historically was Essendant Inc.'s wholly owned principal operating company. Upon information and belief, Essendant Co. remained within the ownership and control structure established through that acquisition at all times relevant to this action.

18. Essendant employed 100 or more employees, excluding part-time employees, and/or 100 or more employees who in the aggregate worked at least 4,000 hours per week, exclusive of overtime, and therefore was an "employer" under the WARN Act. Essendant also employed at least 75 employees within the meaning of 820 ILCS 65/5(c) and therefore was an "employer" under the Illinois WARN Act.

19. Upon information and belief, the Lincolnshire Facility was a single site of employment under the WARN Act and Illinois WARN Act for Plaintiff and the other affected

employees who worked there and/or were assigned to, based at, reported to, or received assignments from that Facility.

20. Defendants, acting individually and/or collectively as a single employer, made, directed, approved, implemented, and/or exercised control over the decision to terminate Plaintiff and other similarly situated employees in connection with the closing and/or mass layoff without providing the full 60 days' advance written notice required by the WARN Act and the Illinois WARN Act.

## SINGLE-EMPLOYER ALLEGATIONS

21. Federal WARN regulations provide that related entities may be treated as a single employer depending on their degree of independence, considering among other things: (i) common ownership; (ii) common directors and/or officers; (iii) de facto exercise of control; (iv) unity of personnel policies emanating from a common source; and (v) dependency of operations. 20 C.F.R. § 639.3(a)(2). The Illinois WARN regulations apply materially the same factors, including common ownership, common directors and/or officers, actual exercise of control, unity of personnel policies, and dependency of operations. 56 Ill. Adm. Code § 230.110.

22. Defendants satisfy the single-employer standard under the totality of the circumstances. Their relationship extends materially beyond passive investment ownership and includes formal management oversight, shared services, intercompany personnel arrangements, and enterprise-level decision-making concerning Essendant.

23. Common ownership. Sycamore acquired Essendant through a Sycamore-controlled acquisition structure in January 2019. Essendant thereafter remained within Sycamore's portfolio and under Sycamore's ultimate ownership and control. This common ownership relationship continued during the restructuring and employment losses alleged herein.

24. Common directors, officers, and management. Sycamore's involvement in Essendant extended beyond passive investment ownership. In 2024, David Boone, then an operating partner of Sycamore, was installed as Essendant's interim Chief Executive Officer following the retirement of Essendant's prior CEO. Upon information and belief, Sycamore also possessed appointment, removal, approval, and/or oversight authority concerning Essendant's directors, officers, and senior management, and the precise degree of overlap is information uniquely within Defendants' possession.

25. De facto exercise of control. Sycamore's placement of one of its operating partners into Essendant's chief executive role is evidence of active management involvement and supports an inference that Sycamore exercised meaningful control over significant enterprise decisions. Upon information and belief, Sycamore received and reviewed material financial, strategic, restructuring, and operational information concerning Essendant and participated in or retained approval authority over extraordinary decisions affecting Essendant's business.

26. The employment practice at issue was not an isolated, ordinary personnel action. In August 2026, Essendant announced a multistate restructuring affecting at least approximately 1,278 employees in several states and advised governmental authorities that it was exploring strategic alternatives, including potential asset-sale transactions and obtaining additional capital to avoid liquidation. Those matters inherently implicated enterprise-level financing, asset disposition, long-range planning, and management oversight of the type reserved to or shared with Essendant's parent and affiliated entities.

27. Upon information and belief, Sycamore participated in, directed, approved, authorized, or exercised final decision-making authority over material aspects of Essendant's 2026 restructuring, financing strategy, potential asset sales, facility closings, workforce reductions,

and/or the decision to accelerate employment losses from the dates previously announced in WARN notices. The identity of the persons who authorized the accelerated terminations and the communications reflecting that authorization are within Defendants' exclusive possession and will be the subject of discovery.

28. Unity of personnel policies. Upon information and belief, Sycamore's governance and management oversight of Essendant included oversight of senior management, workforce planning, compensation and benefits, restructuring, reductions in force, and other material personnel matters. Sycamore's installation of an operating partner as Essendant's interim CEO further supports an inference that personnel and workforce policies were subject to common or coordinated management rather than being wholly independent of Sycamore.

29. Upon information and belief, Essendant's personnel policies and employment practices, including policies or practices relating to workforce planning, compensation and benefits, severance, employee communications, reductions in force, and termination administration, were subject to oversight, approval, coordination, and/or influence from Sycamore in connection with the restructuring alleged herein. The precise nature and extent of that involvement is information uniquely within Defendants' possession.

30. Dependency of operations. Essendant's operations were financially and strategically dependent upon its relationship with Sycamore as its private-equity owner. The August 2026 restructuring involved enterprise-level questions concerning financing, additional capital, potential asset sales, liquidation risk, facility closings, and a multistate reduction in force. Upon information and belief, those matters required coordination with, approval from, and/or financial support or strategic direction by Sycamore.

31. Sycamore's direct placement of senior management at Essendant, combined with its ownership, governance, financing, and strategic oversight, further demonstrates personnel and operational interdependence between Defendants rather than a purely passive investment relationship.

32. Upon information and belief, Sycamore's relationship with Essendant during the relevant period included continuing access to material financial and operational information and authority over extraordinary corporate decisions, including matters affecting capitalization, restructuring, strategic alternatives, and senior management.

33. Based on these public facts and the additional facts alleged on information and belief, Defendants were sufficiently integrated with respect to ownership, management, financing, personnel policies, operations, and the challenged restructuring and termination decisions to constitute a single employer under 20 C.F.R. § 639.3(a)(2) and 56 Ill. Adm. Code § 230.110.

34. Accordingly, each Defendant is jointly responsible for compliance with the WARN Act and Illinois WARN Act with respect to the employment losses alleged herein and is liable for the statutory violations resulting from the accelerated terminations.

## **FACTS**

35. Plaintiff worked for Essendant for approximately nine years and, immediately before his termination, held the position of Java Developer Level Two on the IT Shipping Systems Team (Developer, Applications 2 for IT - Shipping Systems Team).

36. In addition to wages, Plaintiff also received employee benefits, including life, health, vision, dental, and disability insurance.

37. On or about August 3, 2026, Essendant submitted a WARN notice concerning its Lincolnshire, Illinois operations. Publicly available WARN information identifies approximately

510 affected employees at the Lincolnshire location, with employment losses scheduled for October 3, 2026.

38. Plaintiff received a WARN notice in early August 2026 that he understood to provide that Essendant would continue to pay him and keep him employed through October 2, 2026.

39. Before the WARN notice, Essendant had discontinued severance packages effective on or about July 31, 2026. Plaintiff was not offered severance in connection with his accelerated termination.

40. On August 27, 2026, Plaintiff attended a meeting at which Essendant informed him that his termination would occur immediately or substantially earlier than the date identified in the prior WARN notice.

41. Essendant advised Plaintiff that his employment would end on August 31, 2026, and his access to Essendant's systems was revoked at the end of the day on August 28, 2026.

42. Plaintiff was not offered another position following the layoff.

43. Plaintiff's employee insurance benefits were terminated in connection with the layoff. Plaintiff had accrued paid time off, which Essendant indicated may be paid out.

44. Upon information and belief, Defendants' accelerated terminations affected Plaintiff and other employees who were part of the previously announced Lincolnshire closing and/or mass layoff.

45. Upon information and belief, Defendants did not provide Plaintiff and the other similarly situated affected employees with 60 days' advance written notice of their actual employment-loss dates.

46. To the extent Defendants rely on the earlier WARN notice, that notice did not provide Plaintiff 60 days' notice of the employment loss that actually occurred because Defendants materially accelerated his termination date.

47. Upon information and belief, Defendants did not provide a new or supplemental WARN notice at least 60 days before the accelerated employment losses.

48. Upon information and belief, no circumstances existed that permitted Defendants to shorten the statutory notice period without satisfying the requirements for reduced notice under the WARN Act and the Illinois WARN Act.

49. By failing to provide Plaintiff and the other affected employees with the notice and benefits required by the WARN Act and the Illinois WARN Act, Defendants acted without reasonable grounds for believing that their conduct complied with either statute.

## CLASS ACTION ALLEGATIONS

50. Plaintiff brings his WARN Act and Illinois WARN Act claims as a Class Action pursuant to Federal Rule of Civil Procedure 23 on behalf of the following proposed class (the "Class"):

> All employees of Defendants who were assigned to, based at, reported to, or received assignments from Essendant's Lincolnshire, Illinois site of employment and who suffered an employment loss on or after August 27, 2026, in connection with Defendants' announced closing and/or mass layoff and within 90 days of August 27, 2026.

51. Class Action treatment of Plaintiff's WARN Act and Illinois WARN Act claims is appropriate because the requirements of Federal Rule of Civil Procedure 23 can be satisfied.

52. The Class is so numerous that joinder of all Class Members is impracticable. Essendant's publicly reported WARN filing identified approximately 510 affected employees

associated with the Lincolnshire location, and upon information and belief, a substantial number of those employees were subject to the accelerated employment losses alleged herein.

53. Questions of law and fact are common to the Class, including whether Defendants constituted a single employer; whether Defendants ordered, directed, approved, or controlled a plant closing and/or mass layoff; whether the Lincolnshire Facility constituted a single site of employment; whether Defendants accelerated the previously announced employment-loss dates; whether Defendants provided legally sufficient notice of the actual employment-loss dates under the WARN Act and Illinois WARN Act; and whether Defendants are jointly liable for statutory damages.

54. Plaintiff is a member of the Class, and his claims are typical of the claims of other Class Members because his employment loss resulted from the same closing and/or mass layoff and the same alleged failure to provide timely notice of the actual termination date.

55. Plaintiff has no interests antagonistic to or in conflict with the interests of the Class and will fairly and adequately protect the interests of the Class. Plaintiff has retained competent and experienced counsel who will effectively represent the Class.

56. Class certification is appropriate pursuant to Rule 23(b)(1) because separate actions would create a risk of inconsistent adjudications and incompatible standards of conduct for Defendants.

57. Class certification is appropriate pursuant to Rule 23(b)(2) to the extent Defendants acted or refused to act on grounds generally applicable to the Class and declaratory relief is appropriate.

58. Class certification is appropriate pursuant to Rule 23(b)(3) because common questions of law and fact predominate over questions affecting only individual members and a

class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

**COUNT I**
**VIOLATIONS OF THE WARN ACT, 29 U.S.C. §§ 2101, *et seq*.**
**(WARN Act)**
**(On behalf of Plaintiff and the putative Class)**

59. Plaintiff re-alleges and incorporates all preceding paragraphs as if set forth in full herein.

60. Essendant was a covered "employer" within the meaning of the WARN Act, 29 U.S.C. § 2101(a)(1), and Defendants collectively constituted a single employer with Essendant for WARN purposes under 20 C.F.R. § 639.3(a)(2).

61. Plaintiff and those he seeks to represent were at all relevant times "affected employees" within the meaning of the WARN Act, 29 U.S.C. § 2101(a)(5).

62. The terminations at issue resulted in "employment losses" within the meaning of 29 U.S.C. § 2101(a)(6).

63. Upon information and belief, the employment losses at the Lincolnshire Facility constituted a "plant closing" and/or "mass layoff" within the meaning of 29 U.S.C. § 2101(a)(2) and/or (3). Essendant's publicly reported WARN filing identified approximately 510 affected employees associated with the Lincolnshire location.

64. The WARN Act requires a covered employer to provide 60 days' advance written notice of a plant closing or mass layoff to affected employees or their representatives, the appropriate State dislocated worker unit, and the chief elected official of the local government. 29 U.S.C. § 2102(a).

65. Defendants failed to provide Plaintiff and the Class with 60 days' advance written notice of their actual employment losses. Although Essendant previously announced an anticipated

October 2026 employment-loss date, Defendants subsequently accelerated Plaintiff's termination to August 31, 2026, with only days of notice.

66. Upon information and belief, Defendants likewise accelerated the employment losses of other Class Members without providing the notice required by 29 U.S.C. § 2102.

67. Defendants violated the WARN Act by failing to provide timely written notice of the plant closing and/or mass layoff as required by 29 U.S.C. § 2102(a).

68. Plaintiff and the Class are "aggrieved employees" within the meaning of 29 U.S.C. § 2104(a)(7).

69. The WARN Act permits an aggrieved employee to bring a civil action individually and on behalf of other similarly situated persons for violations of 29 U.S.C. § 2102. See 29 U.S.C. § 2104(a)(5).

70. Defendants' violations were not in good faith, and Defendants lack reasonable grounds for believing that the accelerated employment losses complied with the WARN Act's notice requirements.

## COUNT II
## VIOLATIONS OF THE ILLINOIS WORKER ADJUSTMENT AND RETRAINING NOTIFICATION ACT, 820 ILCS 65/1, et seq.
## (Illinois WARN Act)
## (On behalf of Plaintiff and the putative Class)

71. Plaintiff re-alleges and incorporates all preceding paragraphs as if set forth in full herein.

72. Essendant was an "employer" within the meaning of the Illinois WARN Act because it employed 75 or more employees, excluding part-time employees, and/or 75 or more employees who in the aggregate worked at least 4,000 hours per week, exclusive of overtime. 820

ILCS 65/5(c). Defendants collectively constituted a single employer under the materially parallel Illinois single-employer standard set forth in 56 Ill. Adm. Code § 230.110.

73. Plaintiff and the Class were "affected employees" who experienced or reasonably could have been expected to experience an "employment loss" in connection with Defendants' closing and/or mass layoff within the meaning of 820 ILCS 65/5(a)-(b).

74. Upon information and belief, the accelerated employment losses at the Lincolnshire Facility constituted a "plant closing" and/or "mass layoff" within the meaning of 820 ILCS 65/5(d) and/or (f). Essendant's publicly reported WARN filing identified approximately 510 affected employees associated with the Lincolnshire location.

75. The Illinois WARN Act prohibits a covered employer from ordering a mass layoff, relocation, or employment loss unless, 60 days before the order takes effect, the employer provides written notice to affected employees and their representatives, the Illinois Department of Commerce and Economic Opportunity, and the chief elected officials of the applicable municipal and county governments. 820 ILCS 65/10(a).

76. Defendants failed to provide Plaintiff and the Class with 60 days' advance written notice of the employment losses that actually occurred. Although Essendant previously announced an anticipated October 2026 employment-loss date, Defendants subsequently accelerated Plaintiff's termination to August 31, 2026, with only days of notice and, upon information and belief, similarly accelerated the employment losses of other Class Members.

77. Defendants therefore violated the Illinois WARN Act by failing to provide timely and legally sufficient notice before ordering the accelerated employment losses. 820 ILCS 65/10.

78. Pursuant to 820 ILCS 65/35, Plaintiff and the Class are entitled to recover from Defendants the relief provided by the Illinois WARN Act, including back pay and the value of benefits for the period of the violation, subject to statutory limitations and any lawful offsets.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

79. Certification of the Class pursuant to Federal Rule of Civil Procedure 23, appointment of Plaintiff as Class Representative, and appointment of Plaintiff's counsel as Class Counsel;

80. A declaration that Defendants violated the WARN Act and the Illinois WARN Act and constituted a single employer for purposes of those statutes;

81. A judgment against Defendants, jointly and severally to the extent permitted by law, and in favor of Plaintiff and the Class for back pay to the fullest extent permitted by 29 U.S.C. § 2104(a)(1) and 820 ILCS 65/35;

82. A judgment against Defendants, jointly and severally to the extent permitted by law, and in favor of Plaintiff and the Class for the value of benefits, including the cost of medical expenses incurred and benefits lost due to the employment loss, to the fullest extent permitted by the WARN Act and the Illinois WARN Act;

83. A finding that Defendants' violations of the WARN Act and the Illinois WARN Act were not in good faith and that Defendants lacked reasonable grounds for believing their conduct complied with the applicable notice requirements;

84. A judgment awarding Plaintiff and the Class their litigation costs, expenses, and reasonable attorneys' fees to the fullest extent permitted by the WARN Act, together with allowable costs under Federal Rule of Civil Procedure 54(d); and

85. Such other and further relief as the Court deems just and proper and as allowed under the WARN Act and the Illinois WARN Act.

**JURY DEMAND**

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: August 28, 2026

Respectfully submitted,

By: */s/ Samuel J. Strauss*

Samuel J. Strauss
**STRAUSS BORRELLI PLLC**
One Magnificent Mile
980 N Michigan Avenue, Suite 1610
Chicago IL, 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
sam@straussborrelli.com

J. Gerard Stranch, IV*
Mariah S. England*
**STRANCH JENNINGS & GARVEY, PLLC**
The Freedom Center
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
(615) 254-8801
gstranch@stranchlaw.com
mengland@stranchlaw.com

*Attorneys for Plaintiff and the Proposed Class*
*(*Pro hac vice application forthcoming)*